Filed 6/18/24  P. v. Garcia CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

|  |  |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>v.<br><br>OSCAR ARMANDO GARCIA,<br><br>　　Defendant and Appellant. | 2d Crim. No. B327622<br>(Super. Ct. No. F000270432002)<br>(San Luis Obispo County) |

　　In 1998 Oscar Armando Garcia was convicted of second degree murder after a jury trial.  We affirmed the judgment of conviction in a 2001 unpublished opinion.  (*People v. Garcia et al.* (July 23, 2001, B126854) (*Garcia I*).)[1]  Garcia appeals from the denial of his Penal Code section 1172.6 petition for resentencing.[2]  At an evidentiary hearing conducted pursuant to section 1172.6,

---

　　[1] We grant the People's request to take judicial notice of the record on appeal in *Garcia I*.

　　[2] All further statutory references are to the Penal Code.

subdivision (d)(3), the trial court found appellant guilty of second degree murder based on the theory that he had directly aided and abetted the stabbing of the victim.  Appellant contends: (1) substantial evidence does not support the trial court's finding, and (2) the trial court failed to perform its duty to independently review the evidence.  We affirm.

*Facts*

Our summary of the facts is taken verbatim from the statement of facts at pages 2-4 of our unpublished 2022 opinion, *People v. Garcia* (March 3, 2022, B300163) (*Garcia II*).  In *Garcia II* "[w]e remand[ed] the matter to the trial court with directions to issue an order to show cause and conduct a[n evidentiary] hearing as required by section [1172.6]."  (*Garcia II*, p. 2.)  The statement of facts in *Garcia II* is taken from the statement of facts in *Garcia I*.

We recognize that section 1172.6 provides that, at an evidentiary hearing, "[t]he court may . . . consider the *procedural history* of the case recited in any prior appellate opinion."  (*Id*., subd. (d)(3), italics added.)  It does not provide that the court may consider the underlying facts recited in a prior appellate opinion.  But after the trial court stated that it had "read and considered the trial transcript of the original jury trial," without objection the court said it had "reviewed" our prior opinion in *Garcia I* and that the facts "are summarized quite succinctly in the 2001 unpublished opinion."  We therefore set forth the relevant facts from our 2001 opinion as summarized in *Garcia II*.  (See *People v. Vance* (2023) 94 Cal.App.5th 706, 714 ["We conclude that, when an appellate opinion is admitted at an evidentiary hearing under section 1172.6, without objection, it is substantial evidence that the trial court can consider"].)

2

"Paso Robles 13 (Paso 13) is a criminal street gang. Mosqueda, whose moniker is 'dreamer,' was a past associate of Paso 13. Mosqueda was friendly with the members of Nameless Crew Style (NCS), a rival gang that was engaged in 'warfare' with Paso 13. . . . Paso 13 put out a 'green light' on Mosqueda, which meant that he was 'free game' to kill. [David] Rey and [appellant] were members of Paso 13, and [Sergio] Ortiz associated with the gang.

" [¶] [¶]

"During the evening of April 12, 1998, Reginald Calhoun went to the trailer park residence of Ortiz and [Monte] Weatherington. [Appellant and other persons were present] there. Mosqueda became the subject of conversation, and everyone was saying, 'Hey, we want to kick dreamer's ass.'

"Calhoun was paged by [Gregory] Vived[, Jr.]. Calhoun telephoned Vived, who said that Mosqueda was going to be at a party in Paso Robles. . . .

"Calhoun, [Manuel] Preciado, and [other persons, including appellant,] drove to the Paso Robles party in three cars. Rey was the sole passenger in a car driven by [appellant]. Rey was armed with a knife that he displayed to [appellant] inside the car. Rey put the knife in his pocket. At the trailer park, Rey had not displayed the knife or mentioned that he possessed it.

"After parking their cars in Paso Robles, Calhoun, Preciado, and [other persons, including appellant,] walked to the apartment where the party was occurring. Weatherington knocked on the front door. A female opened the door, and Weatherington asked to speak to 'dreamer.' Mosqueda came to the door and said, 'What do you guys want?' Weatherington told him to come outside. Mosqueda said, 'We don't want no problems

3

here.'  Mosqueda closed the door, and another person locked it. Calhoun picked up a potted plant and threw it through a plate-glass window.  Rey and Weatherington kicked the front door open.  Calhoun, Preciado, and [other persons, including appellant,] ran through the doorway into the apartment.  They were saying, 'Get your beating like a man,' and 'You know what time it is.  You know it's up.'  Everyone inside 'just started scattering.'  Mosqueda retreated into a bathroom and tried to close the door.  Calhoun testified that he and Rey pulled Mosqueda out into the hallway, but other witnesses testified that Weatherington did the pulling.  Calhoun and [other persons, including appellant,] punched Mosqueda in the hallway.  There was 'a big commotion of bodies' and people were screaming.

" [¶]

"Mosqueda fell to the floor and was lying on his side against a wall.  [Appellant] said to Rey, 'You got a knife.  You got a knife.  Stick him.  Stick him.'  Rey stabbed Mosqueda four times in the chest.  Mosqueda crawled out of the hallway 'like a baby' on his hands and knees with blood on his face, chest, and stomach.  Rey, Vived, [appellant], Ortiz, and Calhoun were 'around him' and were punching and kicking him.  People in the background were saying, 'Leave him alone.  He's knocked out.['] Mosqueda fell to his side.  Rey, Vived, [appellant], Ortiz, and Calhoun continued to hit and kick him.  [Appellant] said, 'Now what's up dreamer? . . .  Now you ain't talking.  You're not saying nothing now, are you?' . . .

"Later that night, Preciado, Ortiz, and Weatherington met [appellant] in a parking lot.  [Appellant] told them that Rey had stabbed Mosqueda 'penitentiary style, real quick,' and that anyone who said 'anything to the cops' would 'get bumped off' in

4

prison. [Appellant] said that Rey 'had got his stripes.' This meant that Rey had earned respect from other gang members and 'was up at the top with the big boys . . . .'

" [¶]

"An expert on criminal street gangs testified that the killing of Mosqueda had benefited Paso 13 because it had 'slowed down' the escalation in violence between Paso 13 and NCS and had 'put [Paso 13] back on top.'"

*Section 1172.6*

Section 1172.6, subdivision (a) provides that "[a] person convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime . . . may file a petition with the court that sentenced the petitioner to have the petitioner's murder . . . conviction vacated and to be resentenced on any remaining [charges] when" certain conditions apply.

After a section 1172.6 petition is filed, "the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause." (*Id.*, subd. (c).)

If an order to show cause is issued, the court shall conduct an evidentiary hearing to determine the petitioner's eligibility for relief. (§ 1172.6, subd. (d)(1).) At the evidentiary hearing the burden is on the People "to prove, beyond a reasonable doubt, that the petitioner is guilty of murder . . . ." (*Id.*, subd. (d)(3).)

5

*Trial Court's Ruling*

The trial court ruled: "I am finding that the People have met their burden beyond a reasonable doubt. That [appellant] is guilty of murder under California law, specifically in that he was a direct aider and abettor of the killing in that he directed Mr. Rey to stab Mr. Mosqueda, and that the natural and probable consequence [rule] does not apply to this class of defendant. And . . . that [section] 1172.6 does not alter the law regarding criminal liability of the direct aiders and abettors of murder, because such persons necessarily know and share the [actual killer's] intent . . . ."

*Direct Aiders and Abettors of Murder*
*Are Not Eligible for Section 1172.6 Relief*

Section 1172.6 was added to the Penal Code by Senate Bill 1437 (SB 1437). (Stats. 2018, ch. 1015, § 4.) "It is well settled that [SB 1437] 'does not eliminate direct aiding and abetting liability for murder because a direct aider and abettor to murder must possess malice aforethought.' [Citation.] 'Under a direct aider and abettor liability theory, the prosecution must prove the person who is not the actual killer "engaged in the requisite acts [actus reus] and had the requisite intent [mens rea]" to aid and abet the target crime of murder.'" (*People v. Williams* (2022) 86 Cal.App.5th 1244, 1252 [brackets for "actus reus" and "mens rea" in original].) "[T]he [direct] aider and abettor must have 'knowledge of the unlawful purpose of the perpetrator' and 'the intent or purpose of committing, encouraging, or facilitating' the commission of the offense." (*People v. Curiel* (2023) 15 Cal.5th 433, 468.)

6

*Standard of Review*

"In determining whether a trial court correctly denied a section 1172.6 petition following an evidentiary hearing, ""we review the factual findings for substantial evidence and the application of those facts to the statute de novo.""" (*People v. Arnold* (2023) 93 Cal.App.5th 376, 383.) "The scope of our review for substantial evidence is well settled. The test is . . . 'whether . . .' '[t]he record . . . disclose[s] . . . evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find [as did the superior court]. . . .'" (*People v. Williams* (2020) 57 Cal.App.5th 652, 663, bracketed material in original.)

""In applying this test, we review the evidence in the light most favorable to the prosecution and presume in support of the [order] the existence of every fact the [superior court] could reasonably have deduced from the evidence. [Citation.] 'Conflicts [in the evidence] . . . subject to justifiable suspicion do not justify the reversal of a judgment, for it is the exclusive province of the trial judge . . . to determine the . . . truth or falsity of the facts upon which a determination depends.""" (*People v. Cody* (2023) 92 Cal.App.5th 87, 111, bracketed material in original.)

*Substantial Evidence Supports the Trial Court's*
*Finding that Appellant Was a Direct Aider and Abettor*

Appellant does not dispute that both Calhoun and Rey claimed to have heard appellant say, "Stick him. Stick him." Nor does appellant dispute that he would have been a direct aider and abettor had he said these words to Rey prior to the stabbing. Instead, appellant attacks the credibility of Calhoun and Rey: "[T]here were a number of people at the scene, including others

7

who were participating in the victim's beating: of those only two claimed appellant told the actual killer to stab the victim.  One of those two was Rey, the actual killer, whom appellant had 'ratted out' to police.  The other was Calhoun, who had a longstanding grudge against appellant. . . .  The testimony of Rey and Calhoun is too thin and corrupt a thread upon which to hang appellant, not proof beyond a reasonable doubt . . . ."  "Calhoun and Rey . . . had an animus towards appellant . . . , and [their] credibility on this point was . . . undermined by the other percipient witnesses."

The trial court credited Calhoun's and Rey's testimony. "[F]or us to reject the testimony of witnesses believed by a trial court, there must exist either a physical impossibility that their testimony is true or that its falsity is apparent without resorting to inferences or deductions.  [Citation.]  There was nothing inherently improbable about" Calhoun's and Rey's testimony that they heard appellant say, "Stick him.  Stick him." (*People v. Gayther* (1980) 110 Cal.App.3d 79, 87.)  The court said it was "taking into consideration that David Rey, who was the actual stabber, testified that prior to the incident he displayed the knife to [appellant] in the vehicle [on the way to the Paso Robles party] . . . ."  Thus, appellant knew that Rey had a knife.

*The Trial Court Did Not Fail to Perform Its*
*Duty to Independently Review the Evidence*

Appellant claims the trial court "did *not* independently find proof beyond a reasonable doubt . . . but rather adopted the factual findings of the prior [2001] appellate opinion . . . ." Appellant argues that the trial "court's recitation of the facts so uncomfortably mirrors this Court's factual summary in its prior appellate opinion, that the [trial] court's independent factfinding appears to have been only a sufficiency [of the evidence] review."

8

"[I]t is presumed that the court followed the law. As [our Supreme Court] stated in *Denham* [*v. Superior Court* (1970) 2 Cal.3d 557, 564,] "'A judgment . . . of the lower court is *presumed* correct. All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown.'"" (*Wilson v. Sunshine Meat & Liquor Co.* (1983) 34 Cal.3d 554, 564.)

Applying this presumption of correctness, we cannot conclude that the trial court failed to independently review the evidence. The court said, "I have read and considered the trial transcript of the original jury trial . . . which is extensively quoted in [appellant's] petition, as well as [the People's] response or opposition." That the trial court's recitation of facts "mirrored" the factual summary in our 2001 opinion does not show that the trial court failed to independently review the evidence. It shows, as the trial court stated, that the facts "are summarized quite succinctly" in our prior opinion.

### Disposition

The order denying appellant's petition for section 1172.6 relief is affirmed.

NOT TO BE PUBLISHED.


                                                    YEGAN, J.

We concur:


        GILBERT, P. J.


        CODY, J.


9

Jacquelyn H. Duffy, Judge

Superior Court County of San Luis Obispo

_____

Vanessa Place, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Kenneth C. Byrne, Supervising Deputy Attorney General, Allison H. Chung, Deputy Attorney General, for Plaintiff and Respondent.